# EXHIBIT A

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| Lummus Corporation | C.A. No. 2018-0737 |
| Plaintiff, | |
| v. | |
| TFII Legacy, LLC f/k/a Carter Control Systems, L.L.C. | REDACTED PUBLIC VERSION FILED: OCTOBER 17, 2018 |
| Defendant. | |

## VERIFIED COMPLAINT DECLARATORY JUDGMENT AND BREACH OF STOCK PURCHASE AGREEMENT

Plaintiff Lummus Corporation ("Lummus"), by and through its undersigned attorneys, for its Verified Complaint, alleges upon knowledge with respect to its acts and upon information and belief as to other matters, as follows:

1. This dispute arises from Defendant Carter Control's failure to pay Lummus $985,970 which represents the amount of the Post-Closing Adjustment due Lummus under the terms of a Stock Purchase Agreement.[1] The Stock Purchase Agreement, through which Carter Control sold to Lummus all of the issued and outstanding shares of a subsidiary corporation for ███████ anticipated a Post-

---

[1] Lummus has asserted the right to an offset of $103,328.26, representing the amounts collected post-closing from a customer of the Acquired Company (as defined below), which would otherwise be payable from Lummus to Carter Control. Accounting for this offset, Lummus seeks net damages in this action in the amount of $882,641.54.

Closing Adjustment to the purchase price to be calculated pursuant to the specific formula prescribed therein.  Carter Controls has refused to pay any part of the Post-Closing Adjustment.  Lummus seeks a declaratory judgment declaring that Carter Control's objections to Lummus' Post-Closing Adjustment are legally insufficient and that the Post-Closing Adjustment in the amount of $985,970 be immediately due and payable.

## I.   THE PARTIES

2. Plaintiff, Lummus Corporation, is a Delaware corporation with its principal place of business located at 225 Bourne Blvd., Savannah, GA 31408 ("Lummus" or "Buyer").  Lummus is in the business of manufacturing and supplying equipment to the cotton ginning industry.

3. Defendant TFII Legacy, LLC f/k/a Carter Control Systems, L.L.C. is a Delaware limited liability company with a place of business located at 2001 Kirby Drive, Suite 1300, Houston, TX 77019 ("Carter Control" or "Seller").  TFII Legacy, LLC is the successor-in-interest to Carter Control Systems, L.L.C. which itself was a holding company which previously held all of the issued and outstanding shares of Carter Control Systems, Inc., a Maryland corporation (the "Acquired Company").  The Acquired Company was in the business of providing material handling and industrial solutions and related technologies to its customers in the distribution, e-commerce, fulfillment, mail/parcel and government sectors.

## II. JURISDICTION AND VENUE

4. This Court has personal jurisdiction over Carter Control because it is a limited liability company organized under Delaware law.

5. This Court has subject matter jurisdiction over this dispute pursuant to 10 *Del. C.* §341, which provides the Court of Chancery jurisdiction "to hear and determine all matters and causes in equity."

6. Additionally, this Court has subject matter jurisdiction over this dispute pursuant to 8 *Del. C.* §111, as the dispute involves the interpretation of a document or agreement by which an entity creates or sells, or offers to create or sell stock.

7. Venue is appropriate for the additional reason that the parties to the underlying transaction agreed that any suit arising out of or based upon the Stock Purchase Agreement described below may be instituted in the federal courts of the United States of America or the courts of the State of Delaware, in each case located in the City of Wilmington and the County of New Castle.

## III. FACTUAL BACKGROUND

**A.   The Operative Stock Purchase Agreement**

8. Carter Control owned all of the issued and outstanding shares of common stock of Carter Controls Systems, Inc., a Maryland corporation (the "Stock").

9. Lummus and Carter Control entered into a Stock Purchase Agreement dated as of May 21, 2018, as amended by that Amendment to Stock Purchase

Agreement dated as of June 7, 2018 (together, the "SPA" or "Stock Purchase Agreement") whereby Carter Control agreed to sell to Lummus all of the Stock for an aggregate purchase price of ███████. The parties agreed that the purchase price would be subject to a post-closing adjustment (the "Post-Closing Adjustment"). A copy of the SPA and corresponding Amendment are attached hereto as **Exhibits A** and **B**, respectively.

10. The specific procedures for calculating the Post-Closing Adjustment are set forth in detail in Section 2.04 of the SPA.

11. The SPA provides that Buyer (Lummus) shall prepare and deliver to Seller (Carter Control), between 45 and 60 days after the Closing Date (as defined therein), a Closing Working Capital Statement (as defined therein), from which the Post-Closing Adjustment would be calculated.

12. Specifically, Section 2.04(b)(i) of the SPA provides:

> (i) Within sixty (60) days after the Closing Date (but in no event earlier than forty-five (45) days after the Closing Date), Buyer shall prepare and deliver to Seller a statement setting forth its calculation of Closing Working Capital, which statement shall contain a reviewed balance sheet of the Company as of the Closing Date (without giving effect to the transactions contemplated herein) and a calculation of Closing Working Capital (the **"Closing Working Capital Statement"**) and a certificate of the Chief Financial Officer of Buyer that the Closing Working Capital Statement was prepared in accordance with previous Company management practices under GAAP applied using the same accounting methods, practices, principles, policies and procedures that were used in the preparation of the Reviewed Financial Statements.

13. The specific procedure for calculating the Post-Closing Adjustment based upon the Closing Working Capital Statement is set forth in Section 2.04(b)(ii) of the SPA which provides:

> The post-closing adjustment shall be an amount equal to the Closing Working Capital minus the Target Working Capital (the **"Post-Closing Adjustment"**). If the Post-Closing Adjustment is a positive number, Buyer shall pay to Seller an amount equal to the Post-Closing Adjustment. If the Post- Closing Adjustment is a negative number, Seller shall pay to Buyer an amount equal to the Post-Closing Adjustment. The parties agree that Exhibit D sets forth the agreed upon example and calculation methodology for the Post-Closing Adjustment using the Interim Balance Sheet.

14. For purposes of Section 2.04, Target Working Capital is defined by the SPA to mean $937,333. (*See* SPA, Definitions, p. 10.)

15. Seller was entitled to a thirty day review period upon receipt of the Closing Working Capital Statement. Specifically, Section 2.04(c)(i) of the SPA provides:

> (i) <u>Examination</u>. After receipt of the Closing Working Capital Statement, Seller shall have thirty (30) days (the **"Review Period"**) to review the Closing Working Capital Statement. During the Review Period, Seller and Seller's Accountants shall have full access to the books and records of the Company, the personnel of, and work papers prepared by Buyer and/or Buyer's Accountants to the extent that they relate to the Closing Working Capital Statement and to such historical financial information (to the extent in Buyer's possession) relating to the Closing Working Capital Statement as Seller may reasonably request for the purpose of reviewing the Closing Working Capital Statement and to prepare a Statement of Objections (defined below), provided, that such access shall be in a manner that does not materially interfere with the normal business operations of Buyer or the Company.

16.     Seller was provided with an opportunity to object to the Closing Working Capital Statement within the 30 day Review Period. The specific procedure and requirements for submitting an objection to Buyer's Closing Working Capital Statement and resulting Post-Closing Adjustment are set forth in Section 2.04(c)(ii) of the SPA, which provides:

> (ii)    <u>Objection</u>. On or prior to the last day of the Review Period, Seller may object to the Closing Working Capital Statement by delivering to Buyer a written statement setting forth Seller's objections in reasonable detail, indicating each disputed item or amount and the basis for Seller's disagreement therewith (the **"Statement of Objections").** If Seller fails to deliver the Statement of Objections before the expiration of the Review Period, the Closing Working Capital Statement and the Post-Closing Adjustment, as the case may be, reflected in the Closing Working Capital Statement shall be deemed to have been accepted by Seller. If Seller delivers the Statement of Objections before the expiration of the Review Period, Buyer and Seller shall negotiate in good faith to resolve such objections within thirty (30) days after the delivery of the Statement of Objections (the **"Resolution Period"),** and, if the same are so resolved within the Resolution Period, the Post-Closing Adjustment and the Closing Working Capital Statement with such changes as may have been previously agreed in writing by Buyer and Seller, shall be final and binding.

17.     As set forth above, if Seller failed to provide an appropriate Statement of Objections which conformed to the requirements of the SPA, then the Closing Working Capital Statement was to be deemed accepted by Seller and the Seller became obligated to pay the full amount of the Post-Closing Adjustment within five (5) Business Days (as defined in the SPA). *See* Section 2.04(c)(vi) of the SPA.

18. Section 2.04(c)(iii) of the SPA includes a dispute resolution process to resolve certain disputes involving the Post-Closing Adjustment. The dispute resolution process is only triggered where the Buyer and Seller fully comply with their respective obligations set forth in Section 2.04. As set forth below, Carter Control did not deliver to Lummus a sufficient Statement of Objections. Accordingly, the dispute resolution process provided for in Section 2.04(c)(iii) is not implicated and the Post-Closing Adjustment, as set forth below, has been deemed to be accepted and is presently due in full.

### B. The Post-Closing Adjustment Process which Followed the Closing of the SPA.

19. The stock purchase transaction contemplated by the SPA closed on June 7, 2018.

20. By letter dated June 29, 2018, Lummus provided notice to Carter Control that its preliminary analysis showed that a significant Post-Closing Adjustment would be due from Carter Control in the amount of $1,040,832. Although this June 29 letter did not constitute Lummus' Closing Working Capital Statement, the letter was nonetheless intended to alert Carter Control that a significant Post-Closing Adjustment was anticipated and asked Carter Control to take reasonable steps necessary to ensure that it would be in the position to comply with its anticipated financial obligations. A copy of the June 29, 2018 letter is attached hereto as **Exhibit C**.

21. On July 24, 2018, Lummus sent a letter to Carter Control which constituted its Closing Working Capital Statement as required under the SPA. Therein, Lummus' CFO certified to Carter Control that it had calculated the Closing Working Capital Statement pursuant to Section 2.04(b)(i) of the SPA and confirmed that the Post-Closing Adjustment was $1,040,832. A copy of the July 24, 2018 Closing Working Capital Statement is attached hereto as **Exhibit D**.

22. Carter Control, therefore, had until August 23, 2018 in which to provide a compliant Statement of Objections if it objected to any part of Lummus' Closing Working Capital Statement.

23. By letter dated August 6, 2018, counsel for Carter Control requested additional information from Lummus relating to its calculation of the Closing Working Capital Statement. Carter Control requested an expedient response to its information requests. A copy of the August 6, 2018 letter is attached hereto as **Exhibit E**.

24. Lummus, through counsel, fully responded to Carter Control's request the very next day, August 7, 2018. A copy of Lummus' August 7, 2018 correspondence is attached hereto as **Exhibit F**.

25. By letter dated August 13, 2018, Carter Control, through counsel, raised certain questions based upon its further review of the Closing Working

Capital Statement. A copy of this August 13, 2018 correspondence is attached hereto **Exhibit G**.

26. Once again, Lummus responded to Carter Control's additional requests for information within one day. By correspondence from Lummus through counsel dated August 14, 2018, Lummus agreed that certain limited adjustments to its July 24 Closing Working Capital Statement were appropriate. Lummus reduced the amount of the Post-Closing Adjustment to $985,970. A copy of the August 14, 2018 correspondence is attached hereto as **Exhibit H**.

27. Notwithstanding that Section 2.04(c)(i) of the SPA provides that Carter Control and its accountants have "full access to the books and records of the Company, the personnel of, and work papers prepared by, Buyer and/or Buyer's Accountants to the extent that they relate to the Closing Working Capital Statement and to such historical financial information (to the extent in Buyer's possession) relating to the Closing Working Capital Statement as Seller may reasonably request for the purpose of reviewing the Closing Working Capital Statement and to prepare a Statement of Objections," Carter Control asked for no further material information from Lummus before Carter Control provided a letter dated August 23, 2018, which purports to be a Statement of Objections. A copy of Carter Control's purported Statement of Objections is attached hereto as **Exhibit I**.

28.     Pursuant to its Statement of Objections, Carter Control asserted that the Post-Closing Adjustment should total only $360,827.27.  Critically, the purported Statement of Objections did not present Carter Control's claims to Lummus with reasonable, requisite detail of its objections indicating each disputed item or amount, nor did Carter Control provide the basis for its objections.  *See generally*, Section 2.04(c)(ii) of the SPA.

29.     By way of illustration, Carter Control stated that "[E]ach item in the Closing Working Capital Statement that is disputed by [Carter Control] is highlighted in yellow on <u>Exhibit A</u>."  However, each and every line item on the attached Exhibit A is highlighted in yellow (rendering it essentially meaningless), with the exception of "Target Working Capital," a defined term in the SPA.  *See* August 23, 2018 letter, Exhibit I.

30.     The vast majority of the purportedly disputed information highlighted on Exhibit A is financial information which was provided by Carter Control as part of the due diligence, or otherwise associated with the underlying transaction and, in either case, was prepared by, or on behalf of, Carter Control and/or the Acquired Company, as owned by Carter Control.

31.     Carter Controls' across the board objection to the entire schedule supporting the Closing Working Capital Statement, including financial information which it had itself provided to Lummus, does not constitute the reasonable detail

indicating each disputed item or amount as required by the SPA.  Furthermore, Carter Control fails to provide <u>the</u> <u>basis</u> for its disagreement with any of the information presented in the Closing Working Capital Statement, rendering the purported Statement of Objections non-compliant with the requirements set forth in Section 2.04(c)(ii) of the SPA.  As noted, the Statement of Objections must set forth "Seller's objections in reasonable detail, indicating each disputed item or amount and the basis for Seller's disagreement therewith."  *See* Section 2.04(c)(ii) of the SPA.

32.  As a result of Carter Control's failure to submit a compliant Statement of Objections, the Closing Working Capital Statement provided by Lummus is deemed to have been accepted by Carter Control.

33.  On August 27, 2018, Lummus responded to the purported Statement of Objections.  Therein, Lummus asserted that the purported Statement of Objections does not include the requisite reasonable detail setting forth each disputed item or amount, nor did it provide the basis for Carter Control's disagreement therewith.  Additionally, Lummus indicated that the purported Statement of Objections did not clearly specify which items set forth in Buyer's Closing Working Capital Statement that Seller disputed.  Accordingly, Lummus advised Carter Control that it had not timely delivered a Statement of Objections as required under Section 2.04(c)(ii) of the SPA.  A copy of the August 27, 2018 letter is attached hereto as **Exhibit J**.

34. Although not required, and while confirming that Lummus was not waiving any of its rights nor any of Carter Control's obligations under the SPA, Lummus did request further information from Carter Control in an attempt to ascertain the details of any items or amounts in Lummus' Closing Working Capital Statement which Carter Control's disputes and the basis for Carter Control's disagreement therewith. To date, the limited information provided by Carter Control has failed to address Lummus' calculations and Carter Control has objected to the very financial information which it had itself prepared prior to the Closing, which financial information Lummus used to calculate the Post-Closing Adjustment. Despite Lummus' attempts to better understand the purported Statement of Objections, Carter Control has failed to provide Lummus with a meaningful and compliant summary of any disputed items or amounts, nor any basis for Carter Control's disagreement with the Closing Working Capital Statement.

35. Carter Control has not paid Lummus any part of the Post-Closing Adjustment. As a result, Lummus sent a further letter to Carter Control on October 3, 2018 reiterating its entitlement to the Post-Closing Adjustment without further delay. Lummus further indicated that it was offsetting from the Post-Closing Adjustment $103,328.46, representing the amounts collected post-closing from a customer of the Acquired Company, which would otherwise be payable from

Lummus to Carter Control, leaving a balance due of $882,641.54. A copy of the October 3, 2018 letter is attached hereto as **Exhibit K**.

## COUNT I
## (Declaratory Judgment)

36. The paragraphs above are restated and incorporated as if set forth herein.

37. An actual, present and justiciable controversy has arisen and now exists with respect to the current rights of the parties under the SPA, including (i) Lummus' right to have its Post-Closing Adjustment be deemed accepted by Carter Control, and (ii) compelling the immediate payment of the Post-Closing Adjustment.

38. The interests of the parties are real and adverse; the controversy is ripe for disposition and a declaratory judgment entered as set forth below will bring an end to the current controversy.

## COUNT II
## (Breach of Stock Purchase Agreement)

39. The paragraphs above are restated and incorporated as if set forth herein.

40. The SPA provides that the Post-Closing Adjustment presented by Buyer through its Closing Working Capital Statement shall be deemed accepted

unless Seller timely provides a compliant Statement of Objections in the form and with the detail required under Section 2.04(c)(ii) of the SPA.

41.     Lummus provided its Closing Working Capital Statement, which included a calculation of the Post-Closing Adjustment, on July 24, 2018.

42.     The purported Statement of Objection provided by Carter Controls on August 23, 2018 did not meet the requirements of Section 2.04(c)(ii) because it did not provide reasonable detail for the items it disputed, nor did it provide the basis for Carter Control's disagreement with any of the items it purportedly disputed.

43.     As a result of Carter Control's failure to submit a valid Statement of Objections, the Closing Working Capital Statement and related Post-Closing Adjustment in the amount of $985,970 is deemed accepted and is now payable in full.

44.     Carter Control has breached the SPA because it has not paid Lummus the Post-Closing Adjustment, or any part of it, as required under the SPA.

45.     Lummus is entitled to its attorneys' fees and costs incurred in bringing this action by virtue of the "Indemnification by Seller" provision set forth in Section 8.02 of the SPA which provides, in pertinent part, that Seller shall indemnify Buyer for all "Losses" incurred as a result of a breach of the SPA.  *See* Section 8.02 of SPA.  Losses are defined to include "reasonable attorneys' fees and the cost of enforcing any right to indemnification."  *See* Definitions, p. 7 of SPA.

**WHEREFORE,** Lummus respectfully request this Court enter the following relief:

A. An Order declaring (i) Lummus' is entitled to have its Post-Closing Adjustment be deemed accepted by Carter Control, and (ii) Lummus is entitled to the immediate payment of the Post-Closing Adjustment, $103,328.46 of which shall be paid by offset as described above in Footnote 1;

B. An award in the amount of $985,970 reflecting the Post-Closing Adjustment;

C. An award of Lummus' attorneys' fees and costs incurred as a result of this action, as such may be allowed by contract, law or statute;

D. That the costs of this action be taxed against Defendants; and

E. That the Court grant Lummus such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: October 12, 2018        **BUCHANAN INGERSOLL & ROONEY PC**

　　　　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Geoffrey G. Grivner*
　　　　　　　　　　　　　　　　　　　　　　　　　　　Geoffrey G. Grivner (#4711)
　　　　　　　　　　　　　　　　　　　　　　　　　　　Buchanan Ingersoll & Rooney PC
　　　　　　　　　　　　　　　　　　　　　　　　　　　919 North Market Street, Suite 1500
　　　　　　　　　　　　　　　　　　　　　　　　　　　Wilmington, DE 19801
　　　　　　　　　　　　　　　　　　　　　　　　　　　Telephone: (302) 552-4207
　　　　　　　　　　　　　　　　　　　　　　　　　　　Facsimile:  (302) 552-4295

Email:  geoffrey.grivner@bipc.com

## **CERTIFICATE OF SERVICE**

I, Geoffrey G. Grivner, do hereby certify that on this 17th day of October, 2018, a copy of the foregoing *[Redacted Public Version] Verified Complaint for Declaratory Judgment and Breach of Stock Purchase Agreement* was served on the following by Electronic mail at:

TFII Legacy, LLC
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

>*/s/ Geoffrey G. Grivner*
>Geoffrey G. Grivner (#4711)