IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LUMMUS CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 18-1745-CFC-SRF |
| ) | |
| TFII LEGACY, LLC, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

Presently before the court in this breach of contract action is plaintiff Lummus Corporation's ("Lummus") renewed motion for judgment on the pleadings.[1] (D.I. 59) For the following reasons, the court recommends DENYING Lummus' renewed motion for judgment on the pleadings.[2]

### II. BACKGROUND

#### a. Procedural History

On October 12, 2018, Lummus originally filed this action against defendant TFII Legacy, LLC ("Legacy"), alleging breach of contract.[3] (D.I. 1, Ex. A) On November 6, 2018, Legacy

---

[1] The briefing for the pending motion is as follows: Lummus' opening brief (D.I. 33), Legacy's answering brief (D.I. 35), and Lummus' reply brief (D.I. 37). On November 26, 2019, Lummus filed a renewed motion for judgment on the pleadings. (D.I. 59) Lummus rested on its original opening and reply briefs, and Legacy has filed an answering brief in opposition to the renewed motion for judgment on the pleadings. (D.I. 61)

[2] This Report and Recommendation also disposes of the original motion for judgment on the pleadings (D.I. 32). The renewed motion for judgment on the pleadings was filed in response to allegations in the Second Amended Counterclaim that Lummus failed to prepare the Closing Working Capital Statement in accordance with GAAP. (D.I. 59 at ¶¶ 10-14; D.I. 51 at ¶¶ 11-14)

[3] Lummus filed a motion to dismiss in a related action, *TFII Legacy, LLC v. Lummus Corporation*, C.A. No. 19-1309-CFC-SRF. (C.A. No. 19-1309, D.I. 6) The court addressed the

removed the case to this court pursuant to 28 U.S.C. §§ 1441 and 1446. (D.I. 1) On November 13, 2018, Legacy filed a motion to dismiss and compel arbitration, which it subsequently withdrew on December 20, 2018. (D.I. 3; D.I. 8) On December 20, 2018, Legacy filed a counterclaim against Lummus. (D.I. 9) On May 1, 2019, Legacy filed an amended counterclaim (the "First Amended Counterclaim"). (D.I. 29) On May 24, 2019, Lummus filed a motion for judgment on the pleadings. (D.I. 32) On October 17, 2019, Legacy filed a second amended counterclaim (the "Second Amended Counterclaim"). (D.I. 51) On November 26, 2019, Lummus filed a renewed motion for judgment on the pleadings. (D.I. 59)

### b. Parties

Lummus is a Delaware corporation with its principal place of business in Savannah, Georgia. (D.I. 1, Ex. A at ¶ 2) Legacy is a Delaware limited liability company with its principal place of business in Houston, Texas. (*Id.* at ¶ 3) Legacy is the successor-in-interest to Carter Control Systems, L.L.C. ("Carter Control"), a holding company which held all of the issued and outstanding shares of Carter Control Systems, Inc. ("the Company"). (*Id.*)

### c. Facts[4]

On May 21, 2018, Lummus and Carter Control entered into a Stock Purchase Agreement (the "SPA"), wherein Carter Control agreed to sell all issued and outstanding shares of the Company to Lummus.[5] (*Id.* at ¶ 9; D.I. 33, Ex. A) Lummus and Carter Control amended the

---

motion to dismiss in a separate Report and Recommendation on December 18, 2019 (C.A. No. 19-1309, D.I. 10), as the cases are not consolidated.

[4] The facts in this section are based upon allegations in the complaint, which the court accepts as true for the purposes of the present motion for judgment on the pleadings and the motion to dismiss pending in the related suit. *See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

[5] Legacy attached the complaint to its Notice of Removal but failed to attach the exhibits Lummus filed with its complaint. (D.I. 1, Ex. A; D.I. 33 at 2 n.3) Lummus attached those exhibits to its opening brief. (D.I. 33, Exhibits A through K)

2

SPA and held a closing on June 7, 2018. (D.I. 1, Ex. A at ¶ 9; D.I. 33, Ex. B) The parties agreed that the purchase price would be subject to a post-closing adjustment (the "Post-Closing Adjustment"). (D.I. 1, Ex. A at ¶ 9)

On June 29, 2018, Lummus provided Carter Control notice that its preliminary analysis showed a Post-Closing Adjustment in the amount of $1,040,832. (D.I. 1, Ex. A at ¶ 20; D.I. 33, Ex. C) On July 24, 2018, Lummus provided Carter Control its closing working capital statement (the "Closing Working Capital Statement"), as required under the SPA, which confirmed that the Post-Closing Adjustment was $1,040,832. (D.I. 1, Ex. A at ¶ 21; D.I. 33, Ex. D) As a result, pursuant to the SPA, Carter Control's Statement of Objections became due on or before August 23, 2018. (D.I. 1, Ex. A at ¶ 22)

On August 6, 2018, Carter Control requested additional information regarding Lummus' calculation of the Closing Working Capital Statement.[6] (*Id.* at ¶ 23; D.I. 33, Ex. E) Lummus provided its calculations on August 7, 2018 in a table labeled "Exhibit D" (the "Exhibit D table"). (D.I. 1, Ex. A at ¶ 24; D.I. 33, Ex. F) On August 13, 2018, Carter Control submitted a letter, which sought answers to additional questions regarding the calculation of the Closing Working Capital Statement. (D.I. 1, Ex. A at ¶ 25, D.I. 33, Ex. G) On August 14, 2018, Lummus responded to Carter Control's additional questions and reduced the amount of the Post-Closing Adjustment to $985,970. (D.I. 1, Ex. A at ¶ 26; D.I. 33, Ex. H)

On August 23, 2018, Carter Control submitted a letter, which it identified as its statement of objections (the "Statement of Objections"). (D.I. 1, Ex. A at ¶ 27; D.I. 33, Ex. I) The Statement of Objections included a cover letter that stated that "[e]ach item in the Closing

---

[6] It is undisputed that Legacy did not exercise its rights under section 2.04(c) of the SPA to access Lummus' books and records or personnel with respect to its analysis of Lummus' Closing Working Capital Statement. (D.I. 33, Ex. E; Ex. H; D.I. 37 at 7; D.I. 51 at ¶ 13)

3

Working Capital Statement that is disputed by [Carter Control] is highlighted in yellow on Exhibit A." (D.I. 33, Ex. I) The attached "Exhibit A" is a highlighted version of the Exhibit D table, wherein all line items are highlighted in yellow, except the "Target Working Capital," which is defined as $937,333 in the SPA. (D.I. 1, Ex. A at ¶ 29; D.I. 33, Ex. A at art. 1; Ex. I) The Statement of Objections asserts that the Post-Closing Adjustment (representing the amount owed by Legacy to Lummus) should instead total $360,827.27. (D.I. 1, Ex. A at ¶ 28; D.I. 33, Ex. I)

On August 27, 2018, Lummus responded to Carter Control's Statement of Objections, and asserted that the Statement of Objections failed to include the requisite reasonable detail setting forth each disputed item or amount, and the basis for Carter Control's objections. (D.I. 1, Ex. A at ¶ 33; D.I. 33, Ex. J) On October 3, 2018, Lummus delivered a letter to Legacy, wherein Lummus noted that it was offsetting the Post-Closing Adjustment by $103,328.46, the amount collected post-closing from a customer of the Company. (D.I. 1, Ex. A at ¶ 35; D.I. 33, Ex. K) To date, Carter Control has not paid the Post-Closing Adjustment. (D.I. 1, Ex. A at ¶ 35) Lummus seeks net damages in the amount of $882,641.54. (*Id.* at ¶ 1 n.1)

### d. The Stock Purchase Agreement

The SPA outlines procedures for calculating the Post-Closing Adjustment in section 2.04(b), which states:

> (i) Within sixty (60) days after the Closing Date (but in no event earlier than forty-five (45) days after the Closing Date), [Lummus] shall prepare and deliver to [Carter Control] a statement setting forth its calculation of Closing Working Capital,[7] which statement shall contain a reviewed balance sheet of the Company

---

[7] "Closing Working Capital" is defined by the SPA as:

> (a) the Current Assets of the Company, less (b) the Current Liabilities of the Company, determined as of the close of business on the Closing Date; *provided, however*, that for purposes of [Lummus'] calculation of Closing Working Capital

4

as of the Closing Date (without giving effect to the transactions contemplated herein) and a calculation of Closing Working Capital (the **"Closing Working Capital Statement"**) and a certificate of the Chief Financial Officer of [Lummus] that the Closing Working Capital Statement was prepared in accordance with previous Company management practices under GAAP applied using the same accounting methods, practices, principles, policies and procedures that were used in the preparation of the Reviewed Financial Statements.

(ii) The post-closing adjustment shall be an amount equal to the Closing Working Capital minus the Target Working Capital[8] (the **"Post-Closing Adjustment"**). If the Post-Closing Adjustment is a positive number, [Lummus] shall pay to [Carter Control] an amount equal to the Post-Closing Adjustment. If the Post-Closing Adjustment is a negative number, [Carter Control] shall pay to [Lummus] an amount equal to the Post-Closing Adjustment. The parties agree that Exhibit D sets forth the agreed upon example and calculation methodology for the Post-Closing Adjustment using the Interim Balance Sheet.

(D.I. 33, Ex. A at § 2.04(b)(i)-(ii)) (emphasis in original) Upon receipt of the Closing Working Capital Statement, Carter Control was permitted a thirty day review period and an opportunity to object to the Closing Working Capital Statement. (D.I. 1, Ex. A at ¶¶ 15-16) Section 2.04(c) explains:

(i) Examination. After receipt of the Closing Working Capital Statement, [Carter Control] shall have thirty (30) days (the **"Review Period"**) to review the Closing Working Capital Statement. During the Review Period, [Carter Control] and [Carter Control's] Accountants shall have full access to the books and records of the Company, the personnel of, and work papers prepared by, [Lummus] and/or [Lummus'] Accountants to the extent that they relate to the Closing Working

---

to be set forth in the Closing Working Capital Statement and the determination of the Post-Closing Adjustment pursuant to Sections 2.04(b) and 2.04(c), the Uncollected Legacy Sales Tax included in Current Liabilities shall be reduced by the sum of the following: (i) the aggregate Prepaid Legacy Sales Tax that has been paid by the Company to the appropriate tax authorities prior to Closing pursuant to Section 7.02(u) and (ii) the aggregate portion of the Uncollected Legacy Sales Tax that has been collected before or after the Closing by the Company or [Lummus] from the Legacy Sales Tax Customers prior to the date that is the earlier of (i) sixty (60) days after the Closing Date or (ii) the date on which [Lummus] delivers the Closing Working Capital Statement to [Carter Control] pursuant to Section 2.04(b)(i).

(D.I. 33, Ex. A at art. 1) (emphasis in original)
[8] "Target Working Capital" is defined by the SPA as "$937,333." (D.I. 33, Ex. A at art. 1)

5

> Capital Statement and to such historical financial information (to the extent in [Lummus'] possession) relating to the Closing Working Capital Statement as [Carter Control] may reasonably request for the purpose of reviewing the Closing Working Capital Statement and to prepare a Statement of Objections (defined below), *provided, that* such access shall be in a manner that does not materially interfere with the normal business operations of [Lummus] or the Company.
>
> (ii) <u>Objection</u>. On or prior to the last day of the Review Period, [Carter Control] may object to the Closing Working Capital Statement by delivering to [Lummus] a written statement setting forth [Carter Control's] objections in reasonable detail, indicating each disputed item or amount and the basis for [Carter Control's] disagreement therewith (the **"Statement of Objections"**). If [Carter Control] fails to deliver the Statement of Objections before the expiration of the Review Period, the Closing Working Capital Statement and the Post-Closing Adjustment, as the case may be, reflected in the Closing Working Capital Statement shall be deemed to have been accepted by [Carter Control]. If [Carter Control] delivers the Statements of Objections before the expiration of the Review Period, [Lummus] and [Carter Control] shall negotiate in good faith to resolve such objections within thirty (30) days after the delivery of the Statement of Objections (the **"Resolution Period"**), and, if the same are so resolved within the Resolution Period, the Post-Closing Adjustment and the Closing Working Capital Statement with such changes as may have been previously agreed in writing by [Lummus] and [Carter Control], shall be final and binding.

(D.I. 33, Ex. A at § 2.04(c)(i)-(ii)) (emphasis in original) The Post-Closing Adjustment becomes due as set forth in section 2.04(c)(vi):

> (vi) <u>Payments of Post-Closing Adjustment</u>. Except as otherwise provided herein, any payment of the Post-Closing Adjustment shall (A) be due (x) within five (5) Business Days of acceptance or deemed acceptance of the applicable Closing Working Capital Statement or (y) if there are Disputed Amounts, then within five (5) Business Days of the resolution described in clause (v) above; and (B) be paid by wire transfer of immediately available funds to such account as is directed by [Lummus] or [Carter Control], as the case may be.

(D.I. 33, Ex. A at § 2.04(c)(vi)) The SPA includes a dispute resolution process which Lummus contends is not implicated in this case.[9] (D.I. 1, Ex. A at ¶ 18; D.I. 33 at 4; Ex. A at § 2.04(c)(iii))

---

[9] Legacy does not dispute Lummus' contention that the dispute resolution process outlined in the SPA is not implicated in this case. (D.I. 35; D.I. 61)

6

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment will not be granted under Rule 12(c) "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (citation omitted).

A motion for judgment on the pleadings is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss. *See Turbe v. Gov't of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). Accordingly, "the [c]ourt must accept all well-pleaded factual allegations as true, and must draw all reasonable inferences in favor of the non-moving party." *Giove v. Holden*, 2012 WL 2357586, at *2 (D. Del. June 19, 2012) (citing *Turbe*, 938 F.2d at 428). This determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "In deciding whether judgment on the pleadings is appropriate, courts may consider the pleadings, corresponding exhibits thereto, and documents incorporated by reference." *Novartis Pharms. Corp. v. Actavis, Inc.*, C.A. No. 12-366-RGA-CJB, 2012 WL 6212619, at *2 (D. Del. Dec. 5, 2012) (citing *Butamax Advanced Biofuels LLC v. Gevo, Inc.*, C.A. No. 11-54-SLR, 2012 WL 2365905, at *1 (D. Del. June 21, 2012)).

## IV. DISCUSSION

Lummus seeks a declaratory judgment that Carter Control's Statement of Objections failed to meet specific requirements outlined in section 2.04(c)(ii) of the SPA and, therefore, the Post Closing Adjustment totals $985,970. (D.I. 33 at 1, 8-9) In the present motion for judgment on the pleadings, Lummus does not dispute that the Statement of Objections was timely

7

submitted, but argues that it fails to comply with the SPA because it lacks a written statement setting forth objections "in reasonable detail, indicating each disputed item or amount and the basis for disagreement therewith." (*Id.* at 8 & n.5; Ex. A at § 2.04(c)(ii)) Specifically, Lummus asserts that Carter Control did not address each individual line item in the Exhibit D table, and instead highlighted in yellow all but one item. (D.I. 33 at 9-10) Lummus contends that Carter Control failed to provide any analysis or commentary that could be characterized as a basis for its disagreement. (*Id.* at 10-11)

Conversely, Legacy argues that it specifically denied all material allegations regarding the Statement of Objections and that the question of whether Carter Control provided "reasonable detail" presents a material question of fact. (D.I. 35 at 6-7) Furthermore, Legacy argues that the court must review all pleadings, including Legacy's Second Amended Counterclaim, in the light most favorable to Legacy and accept Legacy's denials and allegations as true. (D.I. 35 at 7 n.1) In the Second Amended Counterclaim, Legacy avers that Lummus did not prepare the Closing Working Capital Statement in accordance with GAAP[10] nor in accordance with the Company's ordinary accounting practices before Carter Control had an obligation to submit its Statement of Objections. (D.I. 35 at 7-8; D.I. 51 at ¶¶ 11-12; D.I. 61 at 3-4)

The court recommends denying Lummus' motion for judgment on the pleadings because, assuming the veracity of the well-pleaded factual allegations of the competing pleadings in the light most favorable to the non-moving party, genuine issues of material fact exist. The SPA requires Carter Control to "set[ ] forth . . . objections in reasonable detail, indicating each

---

[10] "GAAP" is defined in the SPA as "United States generally accepted accounting principles in effect from time to time." (D.I. 133, Ex. A at art. 1)

8

disputed item or amount and the basis for . . . disagreement therewith." (D.I. 33, Ex. A at § 2.04(c)(ii)) Here, Carter Control stated that "[e]ach item in the Closing Working Capital Statement that is disputed by [Carter Control] is highlighted in yellow" and attached a table where all items, except for a term defined in the SPA, were highlighted in yellow. (D.I. 33, Ex. F; Ex. I) Legacy also denied Lummus' allegations regarding the alleged inadequacy of the Statement of Objections' in its answer. (D.I. 9 at ¶¶ 17, 28-32, 34, 42-43) Moreover, the SPA does not provide a definition for "reasonable detail" and Lummus' reliance on its own interpretation of "reasonable detail" does not eliminate the fact question as to Legacy's compliance with the SPA. (D.I. 33, Ex. A) The interpretation of the SPA's requirements for objections is not apparent on the face of the pleadings and is to be determined by a trier of fact at a later date.

Furthermore, viewing the factual allegations in the light most favorable to Legacy, the non-moving party, there is a genuine issue of material fact as to whether Lummus breached the SPA in its preparation of the Closing Working Capital Statement. The Second Amended Counterclaim sets forth adequate factual allegations that Lummus did not prepare the Closing Working Capital Statement in accordance with GAAP, nor in accordance with the Company's ordinary accounting practices, as required under section 2.04(b)(i) of the SPA. (D.I. 51 at ¶¶ 11-13) A genuine issue of material fact exists as to whether Lummus breached the SPA by failing to adhere to GAAP, before Carter Control submitted its Statement of Objections.[11]

---

[11] For the first time in the reply brief, Lummus argues that Legacy's claim in the Second Amended Counterclaim amounts to a claim for fraud and that Legacy has failed to plead this claim with the requisite particularity. (D.I. 37 at 6) The court declines to consider arguments raised for the first time in a reply brief. *See* D. Del. LR 7.1.3(c)(2) ("The party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief.").

9

On the face of the competing pleadings and their respective exhibits, there are genuine issues of material fact regarding each party's compliance with the SPA and the amounts due under the SPA, which preclude granting Lummus' motion for judgment on the pleadings. Therefore, the court recommends denying Lummus' motion.

## V. CONCLUSION

For the foregoing reasons, the court recommends denying plaintiff's original and renewed motions for judgment on the pleadings (C.A. No. 18-1475, D.I. 32; D.I. 59).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: December 19, 2019

Sherry R. Fallon
United States Magistrate Judge

10