IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LUMMUS CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>TFII LEGACY, LLC, f/k/a<br>CARTER CONTROL SYSTEMS, L.L.C.,<br><br>    Defendant. | C.A. No. 18-1745-CFC/SRF |

## **DEFENDANT'S THIRD AMENDED COUNTERCLAIM**[1]

Defendant TFII Legacy, LLC f/k/a Carter Control Systems, L.L.C (Legacy) states these counterclaims against Plaintiff Lummus Corporation (Lummus).

### I.   THE PARTIES

1. Legacy is a Delaware limited liability company with its principal place of business in Texas.

2. Lummus Corporation is a Delaware corporation with its principal place of business in Georgia.

### II.   JURISDICTION AND VENUE

3. The Court has personal jurisdiction over the parties because they expressly consented to the jurisdiction of the state and federal courts of Delaware. The Court has supplemental jurisdiction over these counterclaims because they arise out of the same transaction and are compulsory counterclaims. 28 U.S.C. § 1367.

4. Venue is proper in the United States District Court for the District of Delaware because the parties expressly agreed to that venue.

---

[1] Pursuant to FRCP 15(a)(2), Lummus has consented in writing to this amendment.

### III. FACTUAL BACKGROUND

5. Until June 7, 2018, Legacy owned all the issued and outstanding shares of common stock of Carter Control Systems, Inc., a Maryland corporation (the Stock).

6. Lummus and Legacy entered into a Stock Purchase Agreement dated as of May 21, 2018, as amended by that Amendment to Stock Purchase Agreement dated as of June 7, 2018 (together, the SPA or Stock Purchase Agreement), through which Legacy agreed to sell to Lummus all the Stock and Lummus agreed to purchase all the Stock.

7. The parties agreed that the purchase price would be subject to a post-closing adjustment (the Post-Closing Adjustment).

8. Specifically, the SPA obliged Lummus to prepare and deliver to Legacy a Closing Working Capital Statement from which the Post-Closing Adjustment would be calculated by deducting the target working capital from the actual working capital as of the date of closing. Section 2.04(b)(i) of the SPA required Lummus to prepare the Closing Working Capital Statement in accordance with previous Company management practices under GAAP applied using the same accounting methods, practices, principles, policies, and procedures used to prepare the Company's Reviewed Financial Statements.

9. The SPA also obliged Lummus (defined as "Buyer") to use commercially reasonable efforts to collect all legacy sales taxes that were uncollected as of the Closing, and to pay all collected sales taxes to Legacy (defined as "Seller"):

> **Section 5.14  Post-Closing Collection of Uncollected Legacy Sales Tax.** From the Closing Date through April 30, 2019 (the **"Post-Closing Collection Period"**), Buyer shall, and shall cause the Company to, use commercially reasonable efforts to collect the Uncollected Legacy Sales Tax from the Legacy Sales Tax Customers. If, during the Post-Closing Collection Period, Buyer or the Company collects any portion of the Uncollected Legacy Sales

> Tax from the Legacy Sales Tax Customers, then the aggregate amount so collected from such customers (such aggregate amount, the **"Recovered Legacy Sales Tax Amount"**) shall be for the benefit of Seller.  No later than ten (10) Business Days after the earlier of (i) the date upon which the entire Uncollected Legacy Sales Tax has been collected by Buyer or the Company or (ii) the expiration of the Post-Closing Collection Period, Buyer shall pay to Seller an amount equal to the Recovered Legacy Sales Tax Amount (*less* any portion of the Recovered Legacy Sales Tax Amount that was factored into the Closing Working Capital calculation for purposes of determining the Post-Closing Adjustment) by wire transfer of immediately available funds to an account to be designated in writing by Seller to Buyer no later than two (2) Business Days prior to the date of payment.

10. This was to occur no later than May 14, 2019 (ten business days after the Post-Closing Collection Period).

11. The stock purchase transaction contemplated by the SPA closed on June 7, 2018.

12. On July 24, 2018, Lummus sent its Closing Working Capital Statement to Legacy as required under the SPA. Lummus certified that the Closing Working Capital Statement complied with the Section 2.04(b)(i) requirements (i.e., that the financial statement attached to the Statement was a reviewed financial statement and that the Closing Working Capital Statement was prepared in accordance with previous Company management practices under GAAP applied using the same accounting methods, practices, principles, policies, and procedures used to prepare the Company's Reviewed Financial Statements) and represented that Lummus was due a Post-Closing Adjustment in the amount of $1,040,832.

13. Lummus did not attach a reviewed financial statement for the Company to its calculation nor did it prepare the Closing Working Capital Statement in accordance with previous Company management practices under GAAP applied using the same accounting methods, practices, principles, policies, and procedures used to prepare the Company's

Reviewed Financial Statements. Lummus's certification that it had was false.

14. In fact, upon information and belief, Lummus submitted its Closing Working Capital Statement knowing that it presented a false calculation of the actual working capital as of the date of closing and knowing that it was not prepared in compliance with the requirements of Section 2.04(b)(i) of the SPA. Accordingly, Lummus acted in bad faith.

15. While Lummus purported to respond to Legacy's requests for information, they deprived Legacy of the full-and-unfettered access to the books and records that would have permitted it to separately calculate the actual working capital as of the date of closing (and, thereby, the actual proper Working Capital Adjustment).

16. Lummus then initiated this action by seeking a declaration that Lummus is entitled to payment of a Post-Closing Adjustment in the amount stated in the false Closing Working Capital Statement, while knowing that the Closing Working Capital Statement was not prepared in compliance with Section 2.04(b)(i) of the SPA. The complaint Lummus originally filed in the Delaware Court of Chancery (which Legacy subsequently removed to this Court) was verified under oath by Lummus's CEO Ben Hinnen, notwithstanding that Lummus knowingly submitted a false Closing Working Capital Statement that did not comply with the SPA. Lummus's commencement of litigation based on a knowingly false Closing Working Capital Statement constitutes a further act of bad faith.

17. Lummus has acknowledged recovering $103,328.46 in legacy sales taxes through August 2018, and it credited that amount against the amounts it claims are due under its Working Capital Calculation Statement.

18. Upon information and belief, the amount actually collected during the Post-Closing Collection Period – which expired on April 30, 2019 –far exceeds the $103,328.46 that

Lummus acknowledged collecting as of August 2018, eight months before the Post-Closing Collection Period expired. Legacy has demanded that Lummus pay the full amount of Recovered Sales Tax Amount. Lummus has failed and refused to do so despite demand.

## COUNT I
### (Declaratory Judgment)

19. Legacy seeks declaratory judgment as to the actual working capital as of the date of closing and the appropriate Working Capital Adjustment that flows from the actual working capital as of the date of closing. Legacy further seeks to recover its costs, including reasonable and necessary attorney's fees.

## COUNT II
### (Breach of Stock Purchase Agreement and the Covenant of Good Faith and Fair Dealing)

20. The SPA constitutes a valid, existing agreement between Lummus and Legacy. Lummus breached that agreement by submitting a Working Capital Adjustment that was not prepared in accordance with previous Company management practices under GAAP applied using the same accounting methods, practices, principles, policies, and procedures used to prepare the Company's Reviewed Financial Statements. Lummus further breached that agreement by submitting a Working Capital Adjustment that was knowingly misleading and by denying Legacy access to the records that would have permitted it to show the proper calculation of the working capital as of the date of closing. And Lummus breached that agreement and the implied covenants of good faith and fair dealing because the SPA contained express and implied covenants obliging Lummus to honestly calculate the Closing Working Capital, to refrain from manipulating the company's financials to create an artificially low Closing Working Capital Statement, to submit a statement of working capital that complied with GAAP and the Company's prior accounting practices, to submit a Closing Working

Capital Statement that reasonably reflected the actual working capital, and to provide Legacy access to the documents, databases, and information that would permit it to credibly calculate the working capital. Lummus breached these express and implied terms by declining to undertake the steps necessary to submit a compliant Closing Working Capital Statement, by submitting a Closing Working Capital Statement that it knew or should have known did not properly reflect the company's working capital, and by refusing to permit Legacy the opportunity to access the data and documentation that would have permitted it to properly calculate the working capital.

21. These breaches have caused Legacy actual damages. Legacy seeks to recover its actual, special, and consequential damages, prejudgment interest, and its costs, including reasonable and necessary attorney's fees.

## COUNT III
### (Breach of Stock Purchase Agreement – Legacy Sales Tax Recovery)

22. The SPA constitutes a valid, existing contract between Lummus and Legacy.

23. Lummus breached that contract by failing to pay the full amount of the Recovered Sales Tax Amount when due.

24. These breaches have caused Legacy actual damages.

Legacy seeks to recover its actual, consequential, and incidental damages, pre-judgment and post-judgment interest, and its costs, including reasonable and necessary attorney's fees.

### PRAYER

WHEREFORE, Defendant TFII Legacy, LLC f/k/a Carter Control Systems, L.L.C. prays that, upon final hearing Plaintiff Lummus Corporation take nothing by reason of its claims and that Defendant be awarded its actual, consequential, and incidental damages, pre-judgment and post-judgment interest, and costs, including reasonable and necessary attorney's fees, and any

other relief to which it is entitled.

                                  Respectfully submitted,

Dated:  December 23, 2019          WILKS, LUKOFF & BRACEGIRDLE, LLC

                                  */s/ Andrea S. Brooks*
                                Thad J. Bracegirdle (DE Bar No. 3691)
                                Andrea S. Brooks (DE Bar No. 5064)
                                4250 Lancaster Pike, Suite 200
                                Wilmington, Delaware 19805
                                Telephone: (302) 225-0850
                                Email: tbracegirdle@wlblaw.com
                                Email: abrooks@wlblaw.com

                                *Attorneys for Defendant TFII Legacy, LLC f/k/a*
                                *Carter Control Systems, L.L.C.*